UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| H.E.D. INC., | ) | |
| d/b/a Sounds and Graphics; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14 CV 311 |
| | ) | |
| KONICA MINOLTA BUSINESS | ) | |
| SOLUTIONS U.S.A. INC.; KONICA | ) | |
| MINOLTA PREMIER FINANCE; | ) | |
| WILLIAM KOCHANNY; | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

I.  BACKGROUND

This case stems from two contracts, a Premier Lease Agreement ("PLA") and a Maintenance Contract ("MC"), entered into by plaintiff H.E.D. Inc., a printing company doing business as Sounds and Graphics ("H.E.D."), in connection with its lease of a C8000 Konica printer. (DE # 84-9; DE # 90-2.) On the other side of each of these agreements was one or both of the Konica defendants in this case, Konica Minolta Business Solutions U.S.A. Inc. ("KMBS") and Konica Minolta Premier Finance ("KMPF"), though as explained in more detail below, precisely who was a party to the PLA is hotly debated. The PLA contained a waiver regarding warranties, a waiver regarding certain types of damages, a proclamation that the lease constituted a "Finance Lease" under the Uniform Commercial Code ("U.C.C."), and a waiver of certain U.C.C. rights.

Ultimately, the parties' deal went sour, as H.E.D. claims the C8000 was unable to handle papers of a certain thickness as necessary to fulfill orders placed by H.E.D. customers. (DE # 4 at 3.) H.E.D. sued the Konica defendants for breach of warranty and breach of contract, as well as defendant William Kochanny, an employee of KMBS, who H.E.D. claims made misrepresentations regarding characteristics and capabilities of the C8000. (DE # 4.)

Before the court are cross-motions for summary judgment, one brought by H.E.D. (DE # 82), and one brought by the Konica defendants and Kochanny (DE # 89). Three related evidentiary motions were filed. (DE ## 91, 106, 108.)[1] After copious, verbose, and often duplicative briefing, the motions are now ready for ruling.[2] For the reasons set forth below, H.E.D.'s motion for summary judgment is denied, defendants' cross-motion for summary judgment is granted, in part, and denied, in part, and the evidentiary motions are denied as moot, because the resolution of the issues raised therein is not necessary for resolution of the motions for summary judgment.

---

[1] Docket entry 106 was not styled as a motion, but effectively, it is one.

[2] H.E.D. argues that defendants' response to its motion for summary judgment was filed four days late, which appears to be accurate. (DE # 94 at 1.) It seems defendants filed its response as part of its cross-motion for summary judgment, without seeking leave of court for the tardiness of the response portion. However, all of the matters covered by the response are effectively covered in defendants' own cross-motion for summary judgment and the various responses, replies, and sur-replies filed later in the case, so even if the court were to strike the response brief, the subject matter addressed therein would still exist before the court in some other form. H.E.D.'s objection, while technically correct, serves no purpose and is disregarded.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion

for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

## III. DISCUSSION [3]

Though the parties have filed separate cross-motions for summary judgment, the issues addressed in the motions are nearly identical, as are the responses and replies thereto. It is wasteful and unnecessary to address each motion separately, as they involve significant substantive overlap. Therefore, in the context of this opinion, the court addresses the issues generally, with an eye to the ultimate question of the existence of a genuine issue of material fact, while simultaneously keeping in mind the summary judgment burden-shifting standard and relevant burdens of persuasion.

### A. *Parties Subject to the PLA*

At the outset, the court must address a matter critically important to the cross-motions for summary judgment: the identity of the parties subject to the PLA. The importance of this issue is clear from the full page of fine print covering the second page of the PLA: H.E.D. waived a number of its rights vis-a-vis the other party or parties to the PLA, whomever they may be. (DE # 84-9.) Specifically, H.E.D. waived its right to recover consequential, indirect, or incidental damages (*id.* ¶ 12), "rights under Article 2A (508-522) of the UCC" (*id.*), and the right to sue for express or implied

---

[3] All of the parties have applied Indiana law in their briefs, so the court applies the same in this opinion.

4

warranties, including merchantability and fitness for particular purpose (*id.* ¶ 5). For this reason, the court addresses this question of contract interpretation, first.

"The goal of contract interpretation is to determine the intent of the parties when they made the agreement." *Tender Loving Care Mgmt., Inc. v. Sherls,* 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). This court must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. *Id.* Construction of the terms of a written contract generally is a pure question of law. *Id.* If, however, a contract is ambiguous, the parties may introduce extrinsic evidence of its meaning, and the interpretation becomes a question of fact. *Broadbent v. Fifth Third Bank,* 59 N.E.3d 305, 311 (Ind. Ct. App. 2016). "A word or phrase is ambiguous if reasonable people could differ as to its meaning." *Id.*

The PLA, a two-page[4] lease agreement, bound H.E.D. to a certain number of payments over a certain term of months in exchange for use of the C8000. (DE # 84-9 at 2.) At the top of the PLA, a "Konica Minolta" logo appears. (*Id.*) Underneath the logo, it states:

---

[4] Initially, H.E.D. argued that the court should only consider the first page of the lease, and not the second, but it later abandoned this argument. (DE # 114.) Defendants objected to this abandonment, seemingly concerned that the record would be wiped clean of the evidentiary foundation H.E.D. laid for its initial argument, preventing defendants from properly cross-examining certain witnesses at trial. (DE # 117.) As no move was made to strike any documents or evidence, this objection seems misplaced, but the court notes for the sake of completeness that it has disregarded any references to H.E.D.'s "one-page lease" argument, but has not stricken any related evidence from the record.

> This Premier Lease Agreement ("Agreement") is written in "Plain English." The words **you** and **your** refers to the customer (and its guarantors). The words **Lessor, we, us,** and **our** refer to **Konica Minolta Premier Finance, a program of Konica Minolta Business Solutions U.S.A., Inc., its subsidiaries and affiliates.** (Supplier)

(*Id.*, bold in original.) Even from just this opening sentence, it is easy to see why confusion has ensued over the PLA. Are both KMPF and KMBS lessors? Only KMPF and its subsidiaries and affiliates? Only KMPF? If the latter, why the use of the plural "**we, us**, and **our**"?

The rest of the agreement further confuses the issue. Further down on the page, a "Customer Confidence Guarantee" appears, indicating the commitment of "Konica Minolta Business Solutions" to maintaining and, if necessary, replacing the leased equipment. (*Id.*) However, at the bottom, signature lines appear, and "Konica Minolta Premier Finance" is listed above the title "LESSOR." (*Id.*) Below that, a section regarding guarantors begins: "As additional inducement for us, Konica Minolta Premier Finance to enter into the Agreement . . . ." (*Id.*) On the second page of the PLA, it states: "You acknowledge that none of Supplier or their representatives are our agents and none of them are authorized to modify the terms of this Agreement." (*Id.* at 3.)

At this point, the identity of the party or parties to the contract (other than H.E.D.) is clear as mud. While plural is used consistently in reference to the "lessor," the lessor is delineated as only KMPF in the signature line. Further, in the guarantor section, KMPF is specifically indicated as constituting "us," but not KMBS. The second page of the agreement also draws a distinction between the "Supplier" (presumably

KMBS) and the plural pronoun. However, KMBS appears in the Customer Confidence Guarantee section of the PLA, and use of the plural pronouns would be consistent with reading the contract as binding both KMBS and KMPF. Defendants claim that KMBS and KMFP are the same entity, but Indiana law instructs us to give meaning to each term, *Tender Loving Care,* 14 N.E.3d at 72, and defendants' argument would require the court to decide that the parties used two different and very specific terms to mean the same thing, which is at best counterintuitive and at worst bordering on illogical.

In short, no interpretation of the PLA is entirely consistent, indicating ambiguity. As such, the court cannot make a determination on this point at the summary judgment phase, as ambiguous contract provisions involve questions of fact. *Broadbent,* 59 N.E.3d at 311. Thus, both parties' motions for summary judgment are denied to the extent that they seek resolution of this question.

### B. *Warranty Disclaimer*

H.E.D. argues that, regardless of who is a party to the PLA, certain provisions contained therein are unenforceable as a matter of law. Defendants, of course, argue that they are entitled to summary judgment regarding the enforceability of the same. The first of these provisions is the warranty disclaimer appearing in paragraph 5 of the second page of the PLA. H.E.D. argues that it is unenforceable because it is not conspicuous. The warranty disclaimer in question states:

> **5. WARRANTY DISCLAIMER: WE MAKE NO WARRANTY EXPRESS OR IMPLIED, INCLUDING THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE.**

(DE # 84-9 at 3, ¶ 5, bold in original.)

Indiana's version of the U.C.C., which the parties appear to agree governs the PLA, provides that a contract can exclude warranties of merchantability and fitness for a particular purpose if such exclusion is conspicuous. Ind. Code § 26-1-2.1-214. "Conspicuous" is defined as "so written that a reasonable person against whom it is to operate ought to have noticed it." *Id.* § 26-1-1-201(10). The statute further states that "[l]anguage in the body of a form is conspicuous if it is in larger or other contrasting type or color." *Id.*

In this case, the warranty disclaimer is in bold face type, distinct from both the surrounding paragraphs and even some of the sentences in the same paragraph, which are not in bold. (DE # 84-9 at 3, ¶ 5.) It is also in capital letters, whereas approximately five-sixths of the page is not. (*Id.*) Of the five, short, bolded segments of the second page of the PLA, only three of them are also capitalized (the warranty disclaimer being one of them). (*Id.*) The disclaimer appears in the middle of the page, and is the lead sentence in a separate paragraph related to warranties, and the paragraph is separated by a full line space from the paragraphs above and below it. (*Id.*) It is fully conspicuous, and complies with the Indiana Code.

H.E.D. argues that *Jerry Alderman Ford Sales, Inc. v. Bailey,* 291 N.E.2d 92, 102 (Ind. Ct. App. 1972), requires this court to find the warranty disclaimer inconspicuous. In that case, the court held that a jury did not err in finding the existence of an implied warranty not excluded by a written disclaimer, because the jury could have found that

the disclaimer, which was located at the extreme bottom of the second, non-signature page of the contract, was not conspicuous. *Id.* H.E.D. also cites *Jones v. Abriana,* 350 N.E.2d 635, 571 (Ind. Ct. App. 1976), where the court found a warranty exclusion inconspicuous where it was placed on the reverse side of the form "buried in a whole page of fine print" and underlined, as was "nearly half the page."

The disclaimer in this case is not at the extreme bottom of the page, so this case is distinguishable from *Jerry Alderman* at least in that respect, but additional information about the type face and font of the disclaimer in that case is not available, so the court cannot further compare. *Jones* is also distinguishable, as in this case, very few phrases are bolded in the fine print contained on the second page of the PLA, compared to the underlining that appeared on nearly half of the page in *Jones*. Of the five bolded segments, only three are also capitalized. In this case, when the totality of the document is examined, the disclaimer appears conspicuous. Summary judgment is granted to defendants on this issue.

### C. *Finance Lease Designation*

H.E.D. argues that the portion of the PLA which designates that the PLA is a "Finance Lease" under the U.C.C. is also inconspicuous, and defendants argue the opposite. The finance lease designation reads:

> **THIS AGREEMENT CONSTITUTES A "FINANCE LEASE" AS DEFINED IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE.**

(DE # 84-9 at 3, ¶ 5, bold in original.) H.E.D.'s arguments in this regard are virtually identical to its arguments related to the warranty disclaimer, discussed immediately

above, and the arguments fail for the same reasons. Like the warranty disclaimer, the finance lease designation is one of only three provisions on the page in bold face, capital letters. The designation appears in the middle of the page, in a series of paragraphs that are visually separated by lines of space. This provision is conspicuous, and defendants are entitled to summary judgment on this issue.

### D. *Lost Profits under PLA*

The parties dispute whether the PLA excludes lost profits as a form of damages, and both sides seek summary judgment on the issue. The PLA contains a provision limiting damages, which reads:

> YOU AGREE THAT WE WILL NOT BE RESPONSIBLE FOR ANY CONSEQUENTIAL INDIRECT OR INCIDENTAL DAMAGES FOR ANY REASON WHATSOEVER. . . . [Y]ou waive lessee's rights under Article 2A (508-522) of the UCC.

(DE # 84-9 at 3, ¶ 12.)

The parties appear to agree that foreseeable damages constitute direct damages, not consequential damages, and it is difficult to imagine how lost profits are not foreseeable when the lessee of a printer is a printing business. Thus, H.E.D.'s lost profits would not be excluded by the consequential damages waiver in paragraph 12 of the PLA.

However, this point is moot because the waiver of rights under Article 2A, Sections 508-522, of the U.C.C. operates to bar H.E.D.'s recovery of lost profits. Indiana's version of the U.C.C. states that "[c]onsequential damages resulting from a lessor's default include: . . . any loss resulting from general or particular requirements

10

and needs of which the lessor at the time of contracting had reason to know . . . ." Ind. Code § 26-1-2.1-520. At the time of contracting, defendants surely had reason to know of H.E.D.'s general requirements and needs regarding printers for its printing business. After all, H.E.D. was in the business of printing, and defendants were in the business of leasing printers to those in the business of printing. To read the situation any other way fails to comply with common sense. Accordingly, H.E.D.'s lost profits constitute consequential damages under Section 26-1-2.1-520, and the rights to recover under that section were waived by H.E.D. in paragraph 12 of the PLA. Defendants are entitled to summary judgment on this issue.

### E. Lost Profits under MC

Defendants seek a ruling from the court stating that they are not liable for lost profits under the MC. The MC does indeed name "lost profits" as an excluded form of damages. (DE # 90-2 at 4, ¶ 19.) H.E.D. does not dispute this. Defendants are entitled to summary judgment on this point.

### F. Claims Regarding Employees' Statements

H.E.D. seeks a ruling from the court that certain representations made by Konica employees, including Kochanny, constituted express warranties. Similarly, defendants seek a ruling from the court that it is entitled to summary judgment on the fraud claim against Kochanny, which is based on his purported representations to H.E.D. However, the court finds that genuine issues of material fact exist regarding whether any representations or misrepresentations occurred and the content and context of those

11

representations or misrepresentations. These are questions of fact and credibility that the court cannot answer at this stage. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003). Accordingly, both parties' motions for summary judgment are denied in this regard.

IV.     CONCLUSION

For the foregoing reasons, H.E.D.'s motion for summary judgment (DE # 82) is **DENIED**; defendants' cross-motion for summary judgment (DE # 89) is **GRANTED, in part, and DENIED, in part**, and the three related evidentiary motions (DE ## 91, 106, 108) are **DENIED as moot.** The parties are **ORDERED** to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by October 13, 2017. A trial date will be set under separate order.

**SO ORDERED.**

Date: September 29, 2017

        s/James T. Moody
        JUDGE JAMES T. MOODY
        UNITED STATES DISTRICT COURT